JOHN R. IVIMEY, SR. *v.* TOWN OF WATERTOWN ET AL.
(11276)

DALY, LANDAU and FREEDMAN, Js.

Argued January 14—decision released March 30, 1993

*John R. Ivimey, Sr.,* pro se, the appellant (plaintiff).
*Charles D. Stauffacher,* for the appellees (defendants).

DALY, J. The plaintiff instituted this action under the Federal Civil Rights Act, 42 U.S.C. § 1983, for false arrest against the defendants, Officer Brian O'Neill and the town of Watertown (town). The plaintiff appeals from the trial court's order dismissing the allegations with respect to the town and its judgment in favor of O'Neill on the merits. He claims that the trial court (1) should have allowed him to file subsequent pleadings after the defendants filed their answer, (2) improperly denied his motion for a continuance, (3) improperly denied his request to file a second trial brief, (4) improperly rendered judgment in favor of the defendant O'Neill on the merits, (5) improperly dismissed the claims against the defendant town, (6) improperly determined the plaintiff's guilt on vari-

ous motor vehicle infractions, (7) improperly placed the burden of proof on the plaintiff, (8) improperly denied his request to revise, and (9) improperly failed to award damages for the defendants' failure to return the plaintiff's license plates.

A brief history of the pleadings is necessary for the disposition of this appeal. This case was commenced as a small claims action on October 30, 1990. It was subsequently transferred to the regular docket on December 3, 1990. On November 26, 1991, the pleadings were ordered to be closed by December 10, 1991, with trial to begin on December 17, 1991. An amended complaint was filed on December 10, 1991, and an answer was ultimately filed on February 6, 1992. On February 21, 1992, the caseflow manager assigned the matter for trial to commence on March 25, 1992.

On February 20, 1992, the plaintiff filed a request for the defendants to revise their answer and, on March 20, the defendants filed an objection to the request to revise. The trial court denied the request to revise as untimely and additionally held that were it timely, it would be denied "on its merits and as not being in compliance with the Practice Book requirements." On March 23, 1992, the plaintiff filed an application for continuance that was denied as untimely the next day. The defendants' request to file an amended answer and special defenses was filed March 24, 1992, and denied as untimely the same day. On March 26, the defendants filed a revised answer in accordance with the plaintiff's request to revise, despite the trial court's denial of that request. The defendants filed special defenses on the same day, but the trial court refused the defendants' request to allow the special defenses. Also on March 26, 1992, the plaintiff requested a continuance until May 26, 1992. This request was also denied by the trial court. The case

against the town was dismissed and judgment was rendered on behalf of O'Neill. Additional facts will be set forth when they are relevant to each issue.

I

The plaintiff claims that he should have been permitted to file subsequent pleadings after the defendants had filed their answer. The pleadings were ordered to be closed by December 10, 1991. The plaintiff filed an amended complaint on the same day. On December 31, 1991, a default was entered against the defendants for failure to file a responsive pleading by December 20, 1990, in accordance with the trial court's order of December 17. The defendants filed a motion to set aside the default on January 9, 1992, which was marked off with a notation that the defendants were to file an answer. The defendants also requested permission to file a responsive pleading to the amended complaint on or before January 21, 1992. The defendants' answer was filed on February 6, 1992, without objection.

We conclude that the trial court did not act unreasonably or contrary to the law when it determined that all the pleadings filed after the answer of February 6, 1992, were untimely in view of the orders to close the pleadings some fourteen months after the commencement of the action.[1] See *Simmons* v. *Southern Connecticut Gas Co.,* 7 Conn. App. 245, 251, 508 A.2d 288 (1986).

II

The plaintiff claims that the trial court improperly denied his motion for a continuance in violation of his due process rights. On March 26, 1992, the plaintiff

---

[1] Practice Book § 6 provides: "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."

requested a continuance until May 26, 1992, asserting that he was not prepared for trial, that discovery was not completed and that a witness was unavailable.

"A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion. . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of trial. . . . Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Because there is no 'mechanical' test for determining whether the denial of a continuance constitutes an abuse of discretion, we must consider the particular circumstances of each case, paying special attention to the reasons presented to the trial court at the time the request was denied." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Friedland,* 222 Conn. 131, 142, 609 A.2d 645 (1992). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Internal quotation marks omitted.) *State* v. *Aillon,* 202 Conn. 385, 395, 521 A.2d 555 (1987).

We have found nothing in the record or in the plaintiff's arguments that supports his claim that the trial court abused its discretion. "In deciding a motion for continuance, a trial court may consider all the circumstances of the particular case, including unreasonable delay, fairness to the opposing party, and the negligence of the moving party." *Gaudio* v. *Gaudio,* 23 Conn. App. 287, 312, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990); 1 B. Holden & J. Daly, Connecticut Evidence (1988) § 35. Almost seventeen

months had elapsed since the action had been commenced and the pleadings had been closed since February 6, 1992. If the trial court had granted the defendants' motions to file an amended answer and special defenses, the plaintiff's argument might have had some merit but since the trial court denied the defendants' motion, there is no abuse of discretion.

### III

The plaintiff claims that he should have been permitted to file a second trial brief. Practice Book § 285A provides in pertinent part: "The parties may, as of right, or shall, if the court so orders, file, at such time as the court shall determine, written trial briefs discussing the issues in the case and the factual or legal basis upon which they ought to be resolved. If any party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief." The plaintiff filed his brief on March 26, the day the trial commenced, and the defendants filed their brief on the last day of the two day trial.

Just before it orally rendered its decision, the trial court denied the plaintiff's request to file a second trial brief and enumerated the following reasons for its decision: "[T]his action has been pending for sometime. You have had the same opportunity to present a brief as defense counsel. There are legal questions involved, to be sure but, I believe that the principles involved are pretty clear. The question here is one of fact. And the court intends to address these questions now."

"In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Internal quotation marks omitted.) *Walton* v. *New Hartford,* 223 Conn. 155, 169, 612 A.2d 1153 (1992); 1 B. Holden

& J. Daly, supra, § 35. Our rules of practice do not provide for the filing of more than one trial brief by each party as a matter of right, and our examination of the briefs and transcripts has revealed nothing to indicate that the trial court abused its discretion in refusing the plaintiff a second brief. The trial court's reasons for refusing the plaintiff's request were logical. We will, therefore, not disturb the trial court's decision.

## IV

The next two issues involve the plaintiff's claims under 42 U.S.C. § 1983 questioning the legality of stops in 1988 and 1990 of the plaintiff by O'Neill, an officer of the Watertown Police Department. Section 1983 provides a remedy against any person who under the color of state law deprives another of that person's constitutional rights.[2] The plaintiff asserts that the trial court improperly rendered judgment for O'Neill and that the trial court improperly dismissed the case against the town.

We first consider the plaintiff's arguments with regard to O'Neill's liability under § 1983. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous, and, where the legal conclusions of the trial court are challenged, we must determine whether they are legally and logically correct and whether they are supported by the facts set out in the memorandum of decision. *Rostenberg-Doern Co.* v. *Weiner*, 17 Conn. App. 294, 304, 552 A.2d 827 (1989)." *Goldblatt Associates* v. *Panza*, 24 Conn. App. 250, 252, 587 A.2d 433 (1991).

---

[2] 42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state . . . subjects, or causes to be subjected any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . ."

The constitutional issues raised are whether the actions of the officer exceeded the permissible limits of an investigative stop under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1986). See *State* v. *Aillon,* supra, 398. In other words, the question before us is whether the investigative stop was justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed the] intrusion." *Terry* v. *Ohio,* supra, 21; *State* v. *Aillon,* supra, 399. We must look to the totality of the circumstances to determine what constitutes a reasonable and articulable suspicion. Id. We must first determine, "whether the [stops were] justified at [their] inception, and second, whether the ensuing police response was 'reasonably related in scope to the circumstances which justified the interference in the first place.' *Terry* v. *Ohio,* supra, 19–20 . . . ." (Citations omitted.) *State* v. *Aillon,* supra. We conclude that the trial court properly determined that the stops and the plaintiff's arrest were valid under *Terry* v. *Ohio,* supra.

On October 31, 1988, the plaintiff was operating a 1979 Volkswagen when he was observed by O'Neill driving at a slow rate of speed and drifting from one side of the road to the other.[3] It was reasonable for O'Neill to stop the plaintiff after observing his erratic driving. In this instance, there was a possible violation of General Statutes § 14-220 (a) which provides in pertinent part: "No person shall operate a motor vehicle at a speed lower than forty miles per hour on any limited access divided highway and no person shall operate a motor vehicle on any other highway at such a slow speed as to impede or block the normal and reasonable movement of traffic . . . ." There was also a possible violation of General Statutes § 14-227a (a)

---

[3] The trial court found the officer's testimony to be credible and relied on it in rendering its decision.

which provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . ."

After stopping the plaintiff, O'Neill was permitted to ask for the plaintiff's motor vehicle registration certificate, operator's license and any no-fault automobile insurance identification card for the vehicle pursuant to General Statutes § 14-217. The plaintiff produced a Vermont operator's license that had been under suspension since August 6, 1988, and a Vermont registration and insurance certificate for a different vehicle. The plaintiff told O'Neill that he resided in Bethlehem, Connecticut, and in Vermont. O'Neill arrested the plaintiff for operating a motor vehicle while his license was under suspension in violation of General Statutes § 14-215 (a), operating an unregistered motor vehicle in violation of General Statutes § 14-12 (a) and operating without insurance in violation of General Statutes (Rev. to 1991) § 38-327 (now § 38a-371). O'Neill's actions were justified under these circumstances. The trial court properly rendered judgment for O'Neill on the facts of this stop and arrest.

As to the second stop, on November 30, 1990, O'Neill observed the plaintiff operating his car on Main Street in Watertown when the plaintiff made a sharp right hand turn without signaling and parked his car partially on a sidewalk. O'Neill subsequently stopped the plaintiff. A *Terry* stop was justified because there was a reasonably articulable suspicion of two traffic violations. The first was a violation of General Statutes § 14-242 (b) which provides: "A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." O'Neill also had a reasonable and articulable suspicion that the plaintiff had violated General Statutes § 14-250a which provides that no motor vehicle shall "be left parked, standing or stopped on

or across, any public sidewalk . . . ." O'Neill clearly was justified in stopping the plaintiff under *Terry* v. *Ohio,* supra. Therefore, the trial court properly held that the plaintiff had not sustained his burden of proving by a preponderance of the evidence that O'Neill had no legal basis for stopping the plaintiff in either situation.

## V

We now turn to the related claim concerning the trial court's decision granting the town's motion to dismiss under Practice Book § 302. " 'Such a disposition of a case may be resorted to only when a plaintiff has failed to make out a prima facie case, that is, when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff.' *Minicozzi* v. *Atlantic Refining Co.,* 143 Conn. 226, 230, 120 A.2d 924 (1956)." *Logan* v. *O'Neill,* 187 Conn. 721, 728–29, 448 A.2d 1306 (1982). The plaintiff's evidence is to be interpreted in the light most favorable to the plaintiff and every reasonable inference should be drawn in the plaintiff's favor. Id., 729. We must determine whether the trial court properly determined that the plaintiff failed to provide sufficient evidence to support his prima facie case. Id., 728.

A municipality may not be held liable for the acts of its employees that violate the civil rights of another under a theory of respondeat superior. *Monell* v. *City of New York Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Turpin* v. *Mailet,* 579 F.2d 152, cert. denied, 439 U.S. 988, 99 S. Ct. 554, 58 L. Ed. 2d 645 (1978); *Smith* v. *Ambrogio,* 456 F. Sup. 1130, 1135 (D. Conn. 1978). "In order to successfully bring a cause of action against a municipality under § 1983, the plaintiff must demonstrate that the alleged constitutional violations were autho-

rized under the municipality's policy or custom." *Monell v. City of New York Department of Social Services,* supra; *Diverniero* v. *Murphy,* 635 F. Sup. 1531, 1536 (D. Conn. 1986). The trial court properly dismissed the claims pertaining to the town because the plaintiff failed to present any evidence of the existence of a policy or custom that would indicate the town was liable under *Monell.*[4]

The town's liability is also contingent on the judgment against its employee, O'Neill, under General Statutes § 7-465 (a). General Statutes § 7-465 (a) provides in pertinent part: "Any town . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights . . . if the employee, at the time of the occurrence . . . was acting in the performance of his duties and within the scope of his employment, and if such occurrence . . . was not the result of any wilful or wanton act of such employee . . . ." Since that judgment was properly rendered in favor of O'Neill, the town is not liable under this statute. Thus, assuming the trial court might have been premature in dismissing the cause of action against the town at the conclusion of the plaintiff's case, it would be harmless since the trial court rendered judgment for O'Neill and did not award any damages.

## VI

The plaintiff next claims that the trial court improperly determined that he was guilty of motor vehicle infractions related to the events surrounding the two stops. These infractions were nolled. The trial court did not find the plaintiff guilty of these infractions. The trial court merely found that the two stops were sup-

---

[4] The plaintiff himself was the only witness in his case-in-chief.

ported by a reasonable and articulable suspicion of illegal activity and that the arrests were supported by probable cause. Thus, this claim is without merit.

## VII

The plaintiff's claim that the burden of proof was improperly placed on him is likewise without merit. " '[W]henever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such party to show the existence of such fact.' Holden & Daly, Connecticut Evidence § 53." *Albert Mendel & Son, Inc.* v. *Krogh,* 4 Conn. App. 117, 124, 492 A.2d 536 (1985). "It is elementary that in a civil action, the plaintiff bears the burden of proof on all essential elements of a claim. To succeed on a claim asserted under 42 U.S.C. § 1983, a party must prove that he or she was deprived of a right secured by the Constitution or by the laws of the United States and that the person or persons depriving the party of the right acted under color of state law. . . ." (Citations omitted.) *Ruggiero* v. *Krzeminski,* 928 F.2d 558, 562 (2d Cir. 1991). In this action brought under 42 U.S.C. § 1983, the burden of proving that the stops were illegal was properly shouldered by the plaintiff, who alleged the misconduct. Id., 560.

## VIII

The plaintiff also claims that the trial court improperly denied his request to revise the answer and failed to issue notice of the trial court's order. On March 26, 1992, the first day of trial, the defendants filed an amended answer that complied with the plaintiff's request to revise despite the fact that the request to revise had been denied.[5]

---

[5] The *request to revise* had asked the defendants to confine their answer to the allegations of the complaint by deleting nonresponsive statements in the third paragraph of the first count. This is the only revision the defendants made to their answer when they revised it.

An issue is moot when the court can no longer grant any relief. See *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 571, 499 A.2d 1158 (1985). Since the answer was revised as requested, relief from the trial court's decision and any failure to notify the plaintiff of it is no longer required and this issue is moot.

## IX

The plaintiff finally claims that he should have been awarded damages because his registration plates were removed from his motor vehicle incident to the first stop. The plates were not returned to him as he requested. The registration plates were removed because they belonged to a different vehicle and, therefore, were being improperly used on the plaintiff's vehicle.

General Statutes § 14-148 (b) provides: "Any officer may remove any number plate or number plates from any motor vehicle when such motor vehicle is apparently abandoned or when such number plate or number plates have been or are being used illegally and shall forward them to the commissioner with a statement for the reason for such removal." The officer acted within the aegis of this statute and is not liable for conversion.

The judgment is affirmed.

In this opinion the other judges concurred.