STATE OF CONNECTICUT *v.* GREGORY
HERNANDEZ
(AC 23384)

Foti, Flynn and Hennessy, Js.

Argued November 18, 2004—officially released February 15, 2005

*Louis S. Avitabile*, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Con-*

*nelly*, state's attorney, and *Gail P. Hardy*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Gregory Hernandez, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere, of possession of narcotics with the intent to sell in violation of General Statutes § 21a-277 (a). On appeal, the defendant claims that the trial court improperly denied his motion to suppress physical evidence and statements that he made to the police. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On May 22, 2001, at approximately 10:06 p.m., the Waterbury police department received a 911 call complaining that the occupants of a maroon Honda were chasing and firing gunshots at a tan Mercury Topaz. While the complaint taker was collecting additional information, the dispatcher put out a general broadcast for police cars in the area of the Waterbury town green to be on the lookout for a maroon Honda wanted on a "shots fired" call. At approximately 10:10 p.m., the complaint taker finished typing her narrative of the call and officially entered the complaint into the police computer system. At 10:15 p.m., the dispatcher broadcast that the Honda currently was pursuing the Mercury away from town, toward the Waterbury police station.

At the time of the initial broadcast, Steve Pedbereznak, a Waterbury police officer, was outside the station preparing to transfer his personal belongings from his police cruiser to his personal vehicle. Alerted by the nature of the call and given his close proximity to the location where the Honda was last reported to be traveling, Pedbereznak entered his cruiser and circled the block. Approximately three minutes later, Pedbereznak

saw a maroon Honda one-half block from the station. Pedbereznak immediately turned his cruiser around, began to follow the maroon Honda and radioed in a description of the vehicle as well as its license plate number. The complainants, who by that time had reached the station, when informed of Pedbereznak's findings, exclaimed, "That's the [license] plate!" That response was relayed to Pedbereznak, who then initiated a traffic stop of the Honda.

After stopping the Honda, Pedbereznak exited his cruiser, drew his weapon and, using his driver's side door as a shield, waited for backup. He ordered the defendant, who was driving the Honda, to turn off the vehicle's engine and throw the keys on the roof, and ordered the defendant and the passenger in the vehicle to put their hands outside the windows. Pedbereznak then asked the occupants if they had any weapons. They replied that they were unarmed.

The location of the stop was broadcast to backup units, which were advised to proceed with caution, as numerous weapons reportedly were involved. Gary Angon, another Waterbury police officer, was the first backup officer to arrive. Once Angon arrived, Pedbereznak ordered the defendant to step out of the vehicle and place his hands on his head. He then instructed the defendant to walk backward toward the sound of his voice. When the defendant came within reach, Angon grabbed the defendant and pulled his hands down behind his back in order to handcuff him. At that point, the defendant tensed. Angon asked the defendant whether he had a gun, contraband or anything that might prick him. Angon testified at the suppression hearing that he asked that question solely for his protection.

Angon then began performing a patdown search of the defendant's person. As he was running his hand

down the defendant's back, the defendant blurted out, "She doesn't know anything about it. The dope's mine." The defendant then told Angon that he had drugs in the right front pocket of his pants. Angon reached into the defendant's right front pocket and pulled out a plastic bag containing a smaller piece of plastic that contained a brown chalk-like substance. Angon testified that, on the basis of his training and experience, he recognized the substance to be heroin. The defendant then was placed in the back of a police cruiser while Pedbereznak searched the Honda for weapons. No weapons were found. The complainants then were brought to the scene. Although they previously had identified the number on the license plate on the vehicle that the defendant was driving as having been the plate number on the vehicle involved in the shooting, at the scene they were certain that that number was not the one on the maroon Honda involved in the shooting.

Angon testified that while being transported to the station, the defendant was adamant about talking to someone in order to ensure that the female passenger of the vehicle was not arrested. Angon brought the defendant to the vice and narcotics squad where he was read his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendant signed a waiver form and proceeded to give a written statement in which he repeated his earlier oral statement that the drugs belonged to him and that the female passenger had no knowledge of them. The defendant testified that he cooperated with the police because he did not want the passenger to get involved.

The defendant was charged with possession of narcotics with the intent to sell in violation of § 21a-277 (a), to which he entered a plea of not guilty. The defendant then filed a motion to suppress all evidence obtained after the allegedly unconstitutional stop of the vehicle he was driving. After a hearing, the motion to

suppress was denied. The defendant subsequently entered a conditional plea of nolo contendere pursuant to General Statutes § 54-94a, reserving the right to appeal from the denial of the motion to suppress. This appeal followed.

The defendant claims that the court improperly denied his motion to suppress. Specifically, he claims that the initial stop of his vehicle was not supported by a reasonable and articulable suspicion and, even if the stop was justified at its inception, the stop became more intrusive than necessary to complete the investigation for which the stop was made. We will examine each of those claims in turn.

As an initial matter, we set forth our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Jenkins*, 82 Conn. App. 111, 115, 842 A.2d 1148 (2004).

I

The defendant first claims that the court improperly determined that the stop of his vehicle was based on a reasonable and articulable suspicion of criminal activity, as required by *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See also *State* v. *Donahue*, 251 Conn. 636, 642, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000). He argues that the dispatcher initially described the vehicle as a 1988 or 1989, four door, maroon Honda. Because the defendant was driving a 2000, two door,

maroon[1] Honda, Pedbereznak could not have had the reasonable and articulable suspicion necessary to stop the vehicle. We disagree.

"The federal and state law of search and seizure in this area is well settled. Under the fourth amendment to the United States constitution and article first, [§ 7] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . .

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . Thus, [r]easonable and articulable suspicion is . . . based not on the officer's inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. . . . What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances. . . . The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review. . . .

"An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion

[1] The defendant argues that his vehicle was not maroon, but rather "candy apple red" or "cherry apple red." At the hearing on the motion to suppress, the court heard the testimony of several police officers who described the defendant's vehicle as maroon. On the basis of the record as a whole, we cannot conclude that the court's finding was clearly erroneous.

exists requires that we determine, in light of the record taken as a whole, (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts gave rise to such a suspicion is legally correct." (Citations omitted; internal quotation marks omitted.) *State* v. *Strano*, 85 Conn. App. 212, 225–26, 855 A.2d 1028, cert. denied, 271 Conn. 946, 861 A.2d 1179 (2004).

As stated, the make and color of the defendant's vehicle matched that of the suspect vehicle, and Pedbereznak observed the vehicle one-half block from the station. Three minutes earlier, the dispatcher had broadcast that the suspect vehicle's last sighting was in the vicinity of the station. Our Supreme Court has stated that "[p]roximity in time and place of the stop to the crime is highly significant in the determination of whether an investigatory detention is justified by reasonable and articulable suspicion." (Internal quotation marks omitted.) *State* v. *Aillon*, 202 Conn. 385, 400, 521 A.2d 555 (1987). Additionally, when Pedbereznak radioed in the vehicle's license plate number, he was informed that the complainants had identified that plate as belonging to the suspect vehicle. On the basis of the record as a whole, the court properly found that those facts justified the initial stop of the vehicle the defendant was driving.

II

The defendant next claims that even if the *Terry* stop was valid at its inception, it became more intrusive than necessary to complete the investigation for which it was made. The defendant argues that he was subjected to custodial interrogation when Angon asked him if he had any weapons or contraband and that Angon's inquiry did not fit within the public safety exception to *Miranda*. We disagree.

"A *Terry* stop that is justified at its inception will pass constitutional muster only if the ensuing police investigation is reasonably related to the purposes of the stop. Like the determination of initial justification, this inquiry is fact-bound." Id., 401. It is well settled that "an officer is justified in conducting a frisk if he reasonably believes the suspect may be armed and dangerous." *State* v. *Kyles*, 221 Conn. 643, 661, 607 A.2d 355 (1992). "What might be unreasonable when an officer merely suspects that a minor offense has been committed is not unreasonable when, as here, officers have reason to fear that a suspected criminal is armed. The nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the reaction of the suspect to the approach of police are all facts which bear on the issue of reasonableness." (Internal quotation marks omitted.) *State* v. *Wylie*, 10 Conn. App. 683, 687, 525 A.2d 528, cert. denied, 204 Conn. 807, 528 A.2d 1154 (1987).

The United States Supreme Court first articulated the public safety exception to *Miranda* in *New York* v. *Quarles*, 467 U.S. 649, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984). There, the court held that "the concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in *Miranda*. . . . The court reasoned that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. . . . The court decline[d] to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possi-

bly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them. . . . The court explained that questions must relate to an objectively reasonable need to protect the police or the public from any immediate danger . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 502–503, 828 A.2d 1248 (2003).

In the present case, the arriving officers were advised to proceed with extreme caution, as numerous weapons reportedly were involved in the initial incident. With that foreknowledge, Pedbereznak, in order to ensure his safety and that of the other officers, ordered the defendant to open the vehicle's door from the outside, exit the vehicle with his hands on his head and walk backward toward Pedbereznak's voice. When the defendant came within reach, Angon grabbed him and pulled his hands down behind his back. For his safety, prior to performing a patdown search for weapons, Angon asked the defendant whether he had a gun, contraband or anything that might prick him. Considering the nature of the call, i.e., "shots fired," we conclude that the court properly found that this limited questioning reasonably related "to an objectively reasonable need to protect the police or the public from [the danger posed by a possible concealed weapon]." (Internal quotation marks omitted.) *State* v. *Betances*, supra, 265 Conn. 503. As such, the *Terry* stop did not become more intrusive than necessary to complete the investigation for which the stop was made.

On the basis of the foregoing, we determine that the court's decision was legally and logically correct, and was supported by the facts set out in the court's memorandum of decision. We therefore conclude that the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.