### STATE OF CONNECTICUT *v.* TROY THOMAS
### (AC 26595)

Bishop, Harper and Pellegrino, Js.

Argued September 20—officially released November 28, 2006

*Robert J. McKay*, for the appellant (defendant).

*Kate J. Boucher*, certified legal intern, with whom were *Susann E. Gill*, senior assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, and *Terri L. Sonnemann*, assistant state's attorney, for the appellee (state).

BISHOP, J. The defendant, Troy Thomas, appeals from the judgment of the trial court convicting him of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). On appeal, the defendant claims that the police violated his constitutional protection against unreasonable search and seizure and that the police lacked probable cause to arrest him without a warrant. We conclude that the officers' actions were constitutionally permissible and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the defendant's appeal. On October 20, 2003, agent Peter Borysevicz of the federal Drug Enforcement Administration and Officer Brendan Plourde of the Hartford police department were working in the north end of Hartford on a special task force detail to address recent robberies in the area. At about 9 p.m., they received information from Officer Carlo Faienza of the Hartford police department that a black Nissan Maxima with the license plate number 492 RDT had been seen at the scene of a homicide that had occurred in the city six days earlier.

Approximately one hour later, Borysevicz and Plourde saw a Maxima matching Faienza's description traveling south on Barbour Street in Hartford and decided to follow it. While in pursuit, they twice witnessed the Maxima travel past two stop signs without coming to a complete stop. Plourde radioed Faienza for assistance in stopping the Maxima.

Faienza responded and began traveling north on Ridgefield Street, after which the Maxima passed by him traveling south. At this time, Faienza observed that the Maxima appeared to have illegally tinted windows.

Faienza then activated his emergency lights, made a U-turn and drove behind the Maxima intending to cause it to stop.

Initially, the Maxima did not come to a complete stop. Instead the driver left his vehicle in gear in the middle of the road with his foot on the brake. Faienza exited his vehicle and approached the Maxima with his gun drawn and commanded that the driver put the Maxima in park, roll down the windows and show his hands. Borysevicz arrived and positioned his vehicle in front of the Maxima to ensure that the driver would not attempt to flee.

As Faienza approached, he noticed that there were two passengers in the Maxima. Faienza removed and secured the driver, Donyale Newman, from the Maxima. While removing Newman, the officer noticed the front seat passenger, Willie Poole, making furtive movements to the side of his left foot. After securing Newman, Faienza approached the front passenger door to remove and secure Poole. After removing Poole, Faienza leaned into the open front passenger doorway of the Maxima and, at this point, smelled what he believed to be mari-juana and observed in plain view: (1) a small, slowly burning marijuana cigarette in the ashtray; (2) a small plastic bag on the passenger side, front floor area, con-taining a white, rock like substance, which Faienza, on the basis of his experience and training, suspected was cocaine; and (3) a white cellophane bag containing a gritty white powder that was sticking out of the misa-ligned gearshift column.

Next, Faienza removed the defendant from the back-seat. Once the defendant was out of the vehicle, Faienza conducted a further search of the Maxima. In the gear-shift column and the vehicle's dome light, he found a semiautomatic pistol, two ammunition magazines, plas-tic bags containing a white, rock like substance, a cello-phane bag with suspected marijuana and a small scale.

After the search was completed, all three occupants were arrested. Subsequent to the defendant's arrest, Faienza searched the defendant and discovered clear plastic bags containing a white, rock like substance in a pocket on the left sleeve of his shirt.

The defendant was charged in count one with possession of cocaine with the intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b) and in count two[1] with possession of cocaine in violation of General Statutes § 21a-279 (a). The defendant filed a motion to suppress the items seized as a result of the warrantless search of the automobile in which he was a passenger, as well as items seized from the search of his person incident to his arrest. The defendant also filed a motion to dismiss for lack of probable cause as to his arrest.

After a hearing, the court denied the defendant's motions to suppress and to dismiss. The court found that the stop of the Maxima was lawful because Faienza had probable cause to believe that motor vehicle violations had occurred and that he acted reasonably in stopping the Maxima and requesting the occupants to step outside the car. The court further found that as a mere passenger in the Maxima, the defendant had no reasonable expectation of privacy in it. The court also held that even if the defendant did have standing to challenge the search and seizure, the search and seizure was not unlawful because it was done under the plain view exception to the warrant requirement and that, because the items were in plain view, Faienza had probable cause to conduct a full search of the Maxima. Accordingly, the court concluded that the seizure of the items found within the gearshift column and in the dome light was lawful. The court ruled that on the basis of the contraband observed in plain view and the

---

[1] The state entered a nolle prosequi as to count two on April 26, 2005.

contraband discovered upon further search, Faienza had probable cause to arrest all of the occupants of the Maxima on drug related charges. Finally, the court held that the search of the defendant was incident to his lawful arrest, and, therefore, the items found on his person were not illegally seized. Subsequent to the court's denial of both of his motions, the defendant, in accordance with General Statutes § 54-94a,[2] entered a conditional nolo contendere plea as to count one. This appeal followed.

The defendant claims that the initial investigatory stop and detention of the Maxima was not constitutionally valid because the officers did not have a reasonable and articulable suspicion of criminal activity. He further claims that because the police did not have a legitimate basis for stopping the motor vehicle, the subsequent searches and arrests were constitutionally improper. We are not persuaded.

We first set forth our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum

---

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

of decision . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 469, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005).

We must first determine whether the court properly found that Faienza possessed the requisite reasonable and articulable suspicion to justify the stop of the Maxima, as required by *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). If the initial stop is found to be in violation of the defendant's constitutional rights, the "fruits," or evidence seized as a result of the stop, must be suppressed.

When considering the validity of a *Terry* stop, our threshold inquiry is twofold. *State* v. *Oquendo*, 223 Conn. 635, 645–46, 613 A.2d 1300 (1992). First, we must determine "at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure."[3] Id., 645. Next, "[i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." Id., 645–46.

"The federal and state law of search and seizure in this area is well settled. Under the fourth amendment to the United States constitution and article first, [§ 7] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . .

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of

---

[3] In the present case, the state concedes that a seizure occurred when Faienza activated his emergency lights on the police cruiser and Newman brought the Maxima to a halt.

the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . Thus, [r]easonable and articulable suspicion is . . . based not on the officer's inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. . . . What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances. . . . The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review. . . .

"An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion exists requires that we determine, in light of the record taken as a whole, (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Hernandez*, supra, 87 Conn. App. 470–71.

Contrary to the defendant's assertion, a *Terry* stop is also justified to detain a motor vehicle when there exists a reasonable and articulable suspicion of a traffic violation. *Ivimey* v. *Watertown*, 30 Conn. App. 742, 750, 622 A.2d 603, cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993); see also *Kolakowski* v. *Hadley*, 43 Conn. App. 636, 644–45, 685 A.2d 689 (1996) (police observed plaintiff make right turn without signaling, which was sufficient, on its own, to justify investigative stop).

Whether police are justified in stopping a motor vehicle for a traffic infraction is an issue of fact. *State* v. *Lizotte*, 11 Conn. App. 11, 16, 525 A.2d 971, cert. denied, 204 Conn. 806, 528 A.2d 1154 (1987). In challenging the

court's finding with regard to the legality of the initial stop, "the defendant bears the burden of proving that the court's conclusion is clearly erroneous, which is to say that it is unsupported by the facts." (Internal quotation marks omitted.) *State* v. *Leonard*, 14 Conn. App. 134, 137, 539 A.2d 1030 (1988), aff'd, 210 Conn. 480, 556 A.2d 611 (1989).

The record supports the court's conclusion that the police had a reasonable and articulable suspicion that a traffic violation had been committed by the Maxima's operator. Borysevicz and Plourde observed the Maxima pass two stop signs without stopping completely. Furthermore, Faienza observed that the Maxima had tinted windows that were unlawful. Consequently, evidence in the record supported the court's finding that the investigative stop of the Maxima for the traffic violations was justified.

The next focus of our inquiry is whether the subsequent police action violated the defendant's constitutional protections against unreasonable search and seizure and whether the police had probable cause to arrest him. Prior to discussing the merits of the defendant's claims, however, we first address the defendant's standing.

"In order to challenge a search or seizure on fourth amendment grounds, a defendant must show that he has a reasonable expectation of privacy in the place searched." *State* v. *Ortiz*, 47 Conn. App. 333, 337, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998). "An individual has a reasonable expectation of privacy if he subjectively believes that the area will remain private, and his subjective belief is one that society is willing to recognize as reasonable." *State* v. *Haynes*, 7 Conn. App. 550, 552, 509 A.2d 557 (1986). "A passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the

seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search." *State* v. *Delarosa*, 16 Conn. App. 18, 32, 547 A.2d 47 (1988). In sum, "[s]tanding does not exist even though the accused is the target of the search . . . or because a third person's privacy has been invaded . . . or on some automatic basis because of having been charged with a possessory crime." (Citations omitted.) *State* v. *Altrui*, 188 Conn. 161, 179, 448 A.2d 837 (1982).

The defendant claims that the court improperly failed to suppress evidence found in the Maxima and on his person. The defendant conceded, however, that he was merely a passenger and claimed neither an ownership nor a possessory interest in the Maxima or in any of the seized items. He also has not shown a reasonable expectation of privacy in the areas of the Maxima that were searched. Accordingly, we agree with the court that because the defendant did not establish an expectation of privacy in the areas of the automobile that were searched, he has no standing to challenge the constitutionality of the search. Moreover, because the defendant is unable to challenge the search of the vehicle, he cannot challenge the arrest or the search made incident to it. See *State* v. *Burns*, 23 Conn. App. 602, 612–13, 583 A.2d 1296 (1990).

Even if, however, the defendant legitimately could establish standing, we are not persuaded by his claims on the merits. It is a basic principle of constitutional law that "[t]he fourth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, prohibits unreasonable searches and seizures by government agents. A warrantless search and seizure is per se unreasonable, subject to a few well-defined exceptions." (Internal quotation marks omitted.) *State* v. *Hedge*, 59 Conn. App. 272, 276–77, 756 A.2d 319 (2000). Three such recognized

exceptions to the warrant requirement are (1) where there is probable cause to believe that a motor vehicle contains contraband or evidence pertaining to a crime, (2) the "plain view" doctrine and (3) searches incident to a lawful arrest. *State* v. *Badgett*, 200 Conn. 412, 424, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); see *State* v. *Brown*, 279 Conn. 493, 521, 903 A.2d 169 (2006).

"[The automobile] exception to the warrant requirement demands that the officers have probable cause to believe that the vehicle contains contraband. . . . The absence of probable cause . . . will render any warrantless search unreasonable." (Citations omitted.) *State* v. *Badgett*, supra, 200 Conn. 429. "The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made." Id.

The plain view doctrine is "based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 347, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). "It has long been settled that objects in the plain view of an officer who [is legally justified in stopping an automobile] are subject to seizure and may be introduced in evidence." (Internal quotation marks omitted.) *State* v. *Krause*, 163 Conn. 76, 82–83, 301 A.2d 234 (1972). "[W]hen a police officer comes upon evidence in open view, that discovery is not a search at all." *State* v. *Federici*, 179 Conn. 46, 56, 425 A.2d 916 (1979).

The combination of Poole's furtive movements and the observation of contraband within plain view gave the police probable cause to search the motor vehicle.

Furtive movements may be considered as a factor in determining whether officers have the requisite probable cause to conduct a search or arrest. See *State* v. *Williamson*, 10 Conn. App. 532, 545, 524 A.2d 655 cert. denied, 204 Conn. 801, 525 A.2d 965 (1987); see *State* v. *Days*, 89 Conn. App. 789, 806, 875 A.2d 59, cert. denied, 275 Conn. 909, 882 A.2d 677 (2005).

As noted, after observing Poole make furtive movements and removing him from the Maxima as part of the stop,[4] Faienza leaned down and peered into the Maxima through the open door. At that juncture, he smelled and observed a burning marijuana cigarette in the ashtray, a bag of cocaine on the front passenger side floor area and a bag of crack cocaine sticking out of the gearshift column. Faienza did not adjust or move anything within the Maxima to see these items. "[T]here can be no claim to an expectation of privacy to any portion of a motor vehicle which may be viewed from the outside by either an inquisitive passerby or a diligent police officer." *State* v. *Leonard*, supra, 14 Conn. App. 138. Accordingly, Faienza had probable cause to believe that the items were contraband. Thus, he did not need a warrant to seize them.

Moreover, once the items had been seized lawfully, Faienza had probable cause to search the entire vehicle for contraband. This search uncovered a Ruger .45 caliber semiautomatic pistol, two ammunition magazines, more plastic bags containing a white, rock like sub-

---

[4] "A police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for the stop is only an infraction under our traffic laws. Upon doing so, he 'prudently may prefer' to ask that an occupant exit the vehicle; any intrusion upon an occupant's personal liberty in directing that action is de minimis because, on balance, it serves to protect the officer." *State* v. *Dukes*, 209 Conn. 98, 122, 547 A.2d 10 (1988); see also *Maryland* v. *Wilson*, 519 U.S. 408, 415, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) ("officer making a traffic stop may order passengers to get out of the car pending completion of the stop").

stance, a cellophane bag with suspected marijuana, and a small scale in the gearshift column. Faienza also found more clear plastic bags containing a white, rock like substance in the Maxima's dome light. Because all of these items are contraband, the court properly found that Faienza legally seized them from the vehicle.

Furthermore, on the basis of the contraband found and seized from the Maxima, Faienza decided to arrest the defendant without a warrant and conduct a search of his person. This search resulted in the discovery of clear plastic bags containing a white, rock like substance in a pocket on the left sleeve of his shirt. The defendant claims that this warrantless arrest and the subsequent search incident to this arrest were improper. We are not persuaded.

A police officer may arrest a person without a warrant when the officer has probable cause to believe that the person has committed or is committing a felony. *State v. Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999). "The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test." (Internal quotation marks omitted.) *State v. Hedge*, supra, 59 Conn. App. 278. "With respect to warrantless arrests . . . the trial court, in determining whether the arrest is supported by probable cause, is required to make a practical, nontechnical decision whether, under all the circumstances . . . there is a fair probability that the defendant had committed or was committing a felony." (Internal quotation marks omitted.) Id. Moreover, it is also important to note that "[t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." (Internal quotation marks omitted.) *State v. Holloman*, 20 Conn. App. 521, 527–28,

568 A.2d 1052, cert. denied, 214 Conn. 805, 573 A.2d 317 (1990).

"It is an established rule that a properly conducted warrantless search incident to a lawful arrest is itself lawful." *State* v. *Velasco*, supra, 248 Conn. 189. "This exception permits a police officer to conduct a full search of an arrestee and to seize evidence as well as weapons." *State* v. *Trine*, 236 Conn. 216, 235–36, 673 A.2d 1098 (1996). "Thus, if the defendant's arrest was lawful, the subsequent warrantless search . . . also was lawful." *State* v. *Velasco*, supra, 189.

The defendant's warrantless arrest was proper because the totality of circumstances, which consisted of furtive movements made by Poole, contraband seen and seized in plain view, and the contraband seized subsequently upon the searching of the vehicle, provided Faienza with the probable cause to believe that the defendant had committed or was committing a drug related felony. "Actions and things observed by an experienced law enforcement officer may have more significance to him in determining whether the law is being violated at a given time and place than they would have to a layman . . . and such experience is entitled to at least some weight on the ultimate question of probable cause." (Internal quotation marks omitted.) *State* v. *Dukes*, 209 Conn. 98, 123, 547 A.2d 10 (1988). Thus, the court's holding that Faienza had probable cause to arrest the defendant without a warrant because it was reasonable for Faienza to assume that all the occupants of the vehicle were knowingly involved in the possession or sale of illegal drugs was reasonably and logically supported by the evidentiary record.

Accordingly, because the arrest was proper, the search and subsequent seizure incident to the arrest were also permissible. Thus, we conclude that the court properly denied the defendant's motions to suppress

the evidence and to dismiss the case, as the court's factual findings were not clearly erroneous in light of the evidence, and its legal conclusions were legally and logically correct and supported by the facts.

The judgment is affirmed.

In this opinion the other judges concurred.