******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PASQUALE RAFFONE
(AC 37518)

DiPentima, C. J., and Gruendel and Harper, Js.

*Argued December 10, 2015—officially released March 1, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Devlin, J.)

*Pasquale Raffone*, self-represented, the appellant
(defendant).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *John C. Smriga*, state's attor-
ney, and *Tatiana A. Messina*, assistant state's attorney,
for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Pasquale Raffone, appeals from the judgment of the trial court, following an in rem proceeding, ordering the forfeiture of his motor vehicle pursuant to General Statutes § 54-33g. On appeal he raises a number of claims, most of which are not reviewable. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On May 19, 2012, the defendant was arrested and charged with larceny in the fifth degree in violation of General Statutes § 53a-125a and improper use of an operator's license in violation of General Statutes § 14-147 (a).[1] The state commenced an in rem proceeding against the defendant.[2] The state sought to have the defendant's motor vehicle, a red 2002 Ford F-250 pickup truck, adjudicated a nuisance and ordered forfeited. A hearing was held on August 6, 2014, and August 7, 2014, during which the following evidence was presented to the court.

On May 19, 2012, Luis Gonzalez, an employee of The Home Depot in Fairfield, stopped the defendant for leaving the store with two skylight windows without paying for them. During a conversation with Gonzalez, the defendant acknowledged that he possessed a red truck and admitted to a prior theft from the store involving ceiling grids. Gonzalez also recalled an incident in 2011 where the defendant had attempted, unsuccessfully, to return some windows. During that incident, Gonzalez had observed the defendant place the windows in a red truck before driving away.

The Fairfield Police Department arrived at the store and Gonzalez informed the responding officer that the defendant had stated that his identification was in his truck. Lance Newkirchen, a patrol officer with the Fairfield Police Department, testified that the defendant later admitted to stealing the skylight windows, but that this was the only time he had engaged in this type of conduct. Newkirchen further testified that the truck was searched to complete an inventory as a result of its being towed. During his search of the truck, Newkirchen found a black leather binder on the front seat that contained some "old receipts." Newkirchen also stated that he was responsible for having the defendant's truck towed because he believed it had been used in the commission of a crime.

Edward Weihe, a Fairfield police sergeant, testified he received permission from the defendant to enter the vehicle to retrieve the defendant's identification. After opening the door, he detected a "strong odor of marijuana." The truck was searched by Weihe and a police canine but no contraband was found aside from some leafy residue on the floor of the cab. Weihe testified he "deduced" that the defendant had planned to use the

truck to transport the windows that the defendant had attempted to steal.

After hearing argument from the parties, the court issued an oral decision. It found that Gonzalez had observed the defendant take the skylight windows from the store, provide a fraudulent receipt to the cashier and proceed past the last point of sale. The court found that this conduct amounted to a larceny. It then concluded "some kind of vehicle" was necessary to remove the items from the store. Specifically, the court stated: "So, in terms of my conclusions of law, I find that the evidence does show that the defendant did commit the crime of larceny, that he was lawfully arrested by the Fairfield Police Department based on the complaint of [The] Home Depot and that the truck, the Ford F-250 pickup truck, red in color, was lawfully seized. I further find that the truck was intended [to be] use[d] to complete this crime of larceny. Larceny involves the permanent retention of the property from the owner [with the intent] to permanently retain it. You can't leave it in the parking lot. You've got to take it someplace else to sell it or use it or whatever or [fraudulently] return it and I find that the truck would be an integral part of that scheme. And so I do find that the truck was a nuisance under the in rem statute."[3] The court ordered that the truck be turned over to the Fairfield Police Department. This appeal followed.

On appeal, the defendant claims that the state failed to comply with a discovery order from July or August, 2012. The state counters that the record is inadequate to review this claim because the defendant failed to file any transcripts from 2012, and the court file does not contain a motion filed in that time period. Additionally, the state argued that there is nothing in the record that such an order was entered by the court.

As the appellant, the self-represented defendant[4] bore the burden of providing this court with an adequate record. *Diaz* v. *Manchester Memorial Hospital*, 161 Conn. App. 787, 797 n.7,    A.3d    (2015); Practice Book § 61-10. He failed to sustain this burden. In the absence of an adequate record, we can engage only in speculation and conjecture, which have no place in appellate review. *Passalugo* v. *Guida-Seibert Dairy Co.*, 149 Conn. App. 478, 483–84, 91 A.3d 475 (2014); see also *State* v. *Adams*, 117 Conn. App. 747, 754, 982 A.2d 187 (2009).

The defendant next claims that the court improperly denied him the right to call witnesses on his behalf. Specifically, he argues that the court refused to review his subpoenas made on July 1, 2014. The state argues that the defendant failed to indicate where the record reflects that he filed an application in writing for subpoenas as required by Practice Book § 7-19. We agree with the state that the record is inadequate and therefore decline to review this claim.

The defendant next claims that the witnesses were sequestered improperly. Specifically, he argues that "[a]fter each witness testified they were allowed to join the witnesses who had not yet testified out in the hall." The state counters that the record "does not substantiate this claim" because there was no testimony as to the specifics regarding the sequestration of witnesses. It further argues that this claim is unreviewable because the defendant failed to raise an objection before the trial court regarding the sequestration of the witnesses. We agree with the state that this claim is not reviewable on appeal as a result of an inadequate record and the fact that it was not raised before the trial court. See Practice Book § 60-5; *State* v. *Jackson*, 150 Conn. App. 323, 339, 90 A.3d 1031, cert. denied, 312 Conn. 919, 94 A.3d 641 (2014).

The defendant next claims that "[d]uring the trial improper testimony was allowed." Essentially, he contends that the court should not have credited the testimony of Gonzalez because it was contradictory to prior statements and given under false pretenses. The state responds that this argument amounts to a challenge of the court's credibility determination with respect to the testimony of Gonzalez, and, therefore, not subject to appellate review. We agree with the state.

Our Supreme Court has stated: "[W]e may not substitute our judgment for that of the trial court when it comes to evaluating the credibility of a witness. . . . It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . *Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses.* . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Emphasis added; internal quotation marks omitted.) *State* v. *Andrews*, 313 Conn. 266, 323, 96 A.3d 1199 (2014). We decline, therefore, to review this claim regarding the credibility of Gonzalez.

The defendant next argues that Gonzalez violated General Statutes § 53a-119a[5] by asking the defendant to provide more information than his name and address and by detaining and questioning the defendant without reasonable grounds. He further contends that the court improperly prevented him from cross-examining Gonzalez regarding this statute. The state responds, inter alia, that § 53a-119a was not violated, that this claim is not reviewable on appeal because it was not raised in the trial court and that the defendant's questioning of Gonzalez regarding this statute was irrelevant to this proceeding. We agree with the state's arguments.

The defendant next claims his property was seized improperly in the absence of a search and seizure warrant. He further argues that no probable cause existed to search the truck.[6] The state counters that no warrant was required to search the truck because there was probable cause to do so.[7] Additionally, as the state maintains, there was probable cause to seize the vehicle as an instrumentality of the crime of larceny.[8] Finally, the state correctly points out that property seized in connection with an arrest, rather than a warrant, falls within § 54-33g. See *State* v. *One 1977 Buick Automobile*, 196 Conn. 471, 477–79, 493 A.2d 874 (1985). For these reasons, we reject the defendant's claim.[9]

Last, the defendant claims that the court should not have credited the testimony of Newkirchen because it was hearsay, false testimony, and not confirmed by other evidence. The state responds that we should not review this claim challenging the credibility of Newkirchen. We agree. As discussed previously, it is solely the province of the trier of fact, and not an appellate court, to decide credibility issues. *State* v. *Andrews*, supra, 313 Conn. 323. We therefore decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant subsequently pleaded nolo contendere to the larceny charge. See *State* v. *Raffone*, Superior Court, judicial district of Fairfield, Docket No. CR-12-0265030-S (October 17, 2014); see also *Raffone* v. *Home Depot, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-14-5030086-S (June 4, 2015).

[2] "General Statutes § 54-33g provides for a civil action *in rem* for the condemnation and forfeiture of the [property] which was used in the violation of the law. . . . In such an action the guilt or innocence of the owner of the [property] is not in issue. The only issue is whether the [property] was used in violation of law." (Emphasis in original; internal quotation marks omitted.) *State* v. *Connelly*, 194 Conn. 589, 592, 483 A.2d 1085 (1984); see also *State* v. *One 1981 BMW Automobile*, 5 Conn. App. 540, 542–43, 500 A.2d 961 (1985).

[3] Although the court noted the defendant's "pattern" of conduct, it specifically noted that it was not "finding the forfeiture based on that [prior] conduct," but that it was restricting it to the incident on May 19, 2012.

[4] "[I]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party . . . we are also aware that [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Darin* v. *Cais*, 161 Conn. App. 475, 481, A.3d (2015); see also *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 240, 98 A.3d 93 (2014) (fact that defendant was self-represented could not excuse or cure inadequate record).

[5] General Statutes § 53a-119a (a) provides: "Any owner, authorized agent or authorized employee of a retail mercantile establishment, who observes any person concealing or attempting to conceal goods displayed for sale therein, or the ownership of such goods, or transporting such goods from such premises without payment therefor, may question such person as to his name and address and, if such owner, agent or employee has reasonable grounds to believe that the person so questioned was then attempting to commit or was committing larceny of such goods on the premises of such establishment, may detain such person for a time sufficient to summon a police officer to the premises. Any person so questioned by such owner, authorized agent or authorized employee pursuant to the provisions of this

section shall promptly identify himself by name and address. No other information shall be required of such person until a police officer has taken him into custody. For the purposes of this subsection, 'reasonable grounds' shall include knowledge that a person has concealed unpurchased merchandise of such establishment while on the premises or has altered or removed identifying labels on such merchandise while on the premises or is leaving such premises with such unpurchased or concealed or altered merchandise in his possession.''

[6] We note that the defendant has cited no case law in support of this claim. "It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Araujo* v. *Araujo*, 158 Conn. App. 429, 430–31, 119 A.3d 22 (2015); see also *State* v. *Adams*, supra, 117 Conn. App. 753–54.

[7] The defendant consented to the entry of his truck by police officers to retrieve his identification. At that time, the strong odor of marijuana was detected. The state also correctly argues that the "police may seize, tow and conduct an inventory search of vehicles without a warrant when the driver is arrested. *South Dakota* v. *Opperman*, 428 U.S. 364 [96 S. Ct. 3092, 49 L. Ed. 2d 1000] (1976)."

[8] See *State* v. *Thomas*, 98 Conn. App. 542, 551–52, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007) (recognized exceptions to warrant requirement for search and seizure include [1] where there is probable cause that motor vehicle contains contraband or evidence pertaining to crime, [2] plain view doctrine and [3] search incident to lawful arrest).

[9] We also note that the text of § 54-33g (a) provides in relevant part that "[w]hen any property believed to be possessed, controlled, designed or intended for use . . . as a means for committing any criminal offense . . . *has been seized as a result of a lawful arrest or lawful search*, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, [the prosecutor] may petition the court not later than ninety days after the seizure, in the nature of a proceeding in rem, to order forfeiture of such property." (Emphasis added.) Thus, the statute itself does not contain a requirement that the seizure be done pursuant to a warrant, but only that the seizure must be the result of a lawful arrest or search.