STATE OF CONNECTICUT *v.* CURTIS TUCK
(AC 24786)

Dranginis, Bishop and DiPentima, Js.

Argued May 27—officially released August 23, 2005

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. DeJoseph*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. This case is about good citizenship and effective policing. The defendant, Curtis Tuck, appeals from the judgment of conviction for possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant raises

two issues. He claims that the trial court improperly (1) denied his motion to suppress evidence pursuant to the fourth and fourteenth amendments to the United States constitution, article first, § 7, of the constitution of Connecticut, General Statutes § 54-33f and Practice Book § 41-12, and (2) prohibited the defendant from introducing evidence under General Statutes § 52-180, the business record exception to the hearsay rule. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the defendant's appeal. On December 4, 2001, Judy Goldstein, a prekindergarten teacher at the Side By Side community school, in Norwalk, was standing on the school playground with her students. Through a chain-link fence on the playground, she noticed the defendant and a woman, approximately twenty feet away from her, on Chestnut Street. Shortly thereafter, she noticed a SBJ Moving Company truck pull up alongside the defendant and the woman. Goldstein observed the defendant enter the truck through the passenger side. Goldstein witnessed an exchange between the defendant and the truck driver. She then witnessed the defendant climb out of the truck and enter a house at 15 Chestnut Street.

Believing that she had just witnessed a drug transaction, Goldstein contacted the Norwalk police department, which dispatched Officers Thomas Fern and Peter White to the school to speak with her. She described to the officers what she had witnessed, and stated that she had last seen the defendant and his female companion at 15 Chestnut Street. She gave the officers a description of their physical appearance, including their race, sex and clothing. Additionally, she told the officers that she believed she had witnessed a narcotics transaction.

After speaking with Goldstein, the officers went to 15 Chestnut Street, where they encountered the defendant

and a woman, both of whom met the description given to them. As the officers approached, the couple began to walk away. The officers recognized the woman with the defendant as a prostitute and a drug user. Although the officers ordered the defendant and his female companion to stop, the defendant continued to walk away. The officers again ordered the defendant to stop. When he complied, the officers began to question him about illegal activity in the area. As the officers were speaking with the defendant, the officers observed that he looked nervous and repeatedly put his hands in his jacket pocket, even when asked to take his hands out. They asked the defendant if they could pat him down, but before they did so, the defendant confessed to possessing two bags of heroin. The defendant was arrested and the packets were seized.

At the police station, the police discovered thirteen more packets of heroin and $108 in the defendant's jacket pocket pursuant to an inventory search. The defendant was charged with possession of narcotics with the intent to sell in violation of § 21a-277 (a) and possession of narcotics with the intent to sell within 1500 feet of a school in violation of § 21-278a (b).

On April 16, 2003, the defendant filed a motion to suppress the heroin that was seized from him, claiming that the police stop and subsequent patdown had violated his constitutional rights to be free from unlawful search and seizure. Following an evidentiary hearing, the court denied the defendant's motion, finding on the basis of the totality of the circumstances, the officers had a reasonable and articulable suspicion to stop the defendant and to conduct a patdown. In denying the defendant's motion to suppress, the court concluded, on the basis of the information provided by Goldstein, that the officers "did that which could only be characterized as reasonable and acted in a reasonable fashion thereafter." Following a jury trial, the defendant was

found guilty of both counts. He was sentenced to twelve years in prison, with six years special parole. This appeal followed.

## I

The defendant first claims that the court improperly found that there was a reasonable and articulable suspicion to perform an investigatory stop and an ensuing patdown of his person. Specifically, he claims that the stop was predicated on mere speculation because Goldstein could not confirm that she had witnessed a narcotics transaction. He reasons that because the stop was not lawful, the officers did not have a reasonable and articulable suspicion to justify a patdown of his person. We disagree.

We first set forth our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 469, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005).

## A

The defendant first claims that the court improperly concluded that the officers had a reasonable and articulable suspicion of criminal activity to justify the stop, as required by *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

"The federal and state law of search and seizure in this area is well settled. Under the fourth amendment to the United States constitution and article first, [§ 7]

. . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . .

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . Thus, [r]easonable and articulable suspicion is . . . based not on the officer's inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. . . . What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances. . . . The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review. . . .

"An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion exists requires that we determine, in light of the record taken as a whole, (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Hernandez*, supra, 87 Conn. App. 470–71.

The defendant claims that Goldstein's observation of him standing on Chestnut Street and then climbing into a truck to exchange something with the truck driver does not lead reasonably to the conclusion that he actu-

ally was selling drugs. He argues that it is not unreasonable to assume that he was giving the driver a handshake or exchanging something with the driver other than narcotics. The defendant further proffers that the fact that the transaction occurred in an area known for narcotics activity did not give the officers a reasonable and articulable suspicion to stop him.

The record reflects that the court properly found that the officers had a reasonable and articulable suspicion justifying the stop of the defendant. This conclusion is supported by the court's findings that the police gained information through a reliable citizen informant, that the *Terry* stop took place in a high crime area, that the defendant exhibited nervous and evasive behavior and that the defendant's companion was a known drug user.

The incident that gave rise to the police investigation was a report by a citizen informant, Goldstein. At the time of the incident, Goldstein was standing approximately twenty feet from the defendant. When the officers interviewed Goldstein, she recounted to the officers what she observed and "described the defendant and his companion almost exactly." She told the officers that she last saw the defendant entering a house at 15 Chestnut Street. She further stated that she believed she witnessed a narcotics transaction because narcotics transactions frequently occurred in the area, and "she saw an exchange in the truck, that money was exchanged. Something was given in return."

Our Supreme Court has stated that face to face conversations with informants are more credible and reliable because "the officer . . . has the opportunity to assess the informant's credibility and demeanor . . . ." (Citations omitted.) *State* v. *Hammond*, 257 Conn. 610, 622, 778 A.2d 108 (2001), citing *United States* v. *Salazar*, 945 F.2d 47, 50–51 (2d Cir. 1991) ("a face-to-face informant must, as a general matter, be thought more reliable

than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false"), cert. denied, 504 U.S. 923, 112 S. Ct. 1975, 118 L. Ed. 2d 574 (1992). As both White and Fern were experienced officers,[1] who previously were assigned to narcotics enforcement, they were well capable of assessing the credibility of Goldstein and the reliability of her statement.

In addition, the incident occurred in a high crime area, known for its narcotics activity. Although the "reputation of an area as high crime, standing alone, does not justify an arbitrary stop, the police [nevertheless] may take the type of area into account. . . . The character of the neighborhood and the officer's knowledge of narcotics distributions in the area may properly be considered." (Citation omitted; internal quotation marks omitted.) *State* v. *Turner*, 62 Conn. App. 376, 399, 771 A.2d 206 (2001).

The defendant's conduct and his female companion's known criminal history also contributed to the reasonableness of the officer's suspicion. The defendant and his female companion matched the description provided by Goldstein. Both officers testified that they recognized the defendant's female companion from previous criminal activity. Specifically, White testified that he recognized the woman from prior prostitution and narcotics activities. When the officers approached the couple, the defendant appeared nervous and began to walk in the other direction. Our Supreme Court has stated that "[n]ervous, evasive behavior is a pertinent

---

[1] The court found that White and Fern were experienced officers in the Norwalk police department, having been with the department for nine years and thirteen years, respectively. For four years, White, assigned to the narcotics squad and the special unit, acted as an undercover agent, purchasing and selling narcotics. During Fern's thirteen years with the department, he worked for the narcotics division and received special training in narcotics.

factor in determining reasonable suspicion. . . . Furthermore, when an individual suddenly changes his course of conduct upon seeing the police, such conduct tends to support a reasonable suspicion that the individual may be involved in criminal activity." (Citation omitted; internal quotation marks omitted.) *State* v. *Mann*, 271 Conn. 300, 324–25, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005). Thus, on the basis of the record as a whole, the court properly found that those facts justified the initial stop of the defendant.

## B

The defendant further argues that even if the court properly determined that the stop was justified by a reasonable and articulable suspicion, it improperly found that the officers' attempt to conduct a patdown was supported by a reasonable and articulable suspicion that he could be armed and dangerous. Specifically, the defendant claims that his nervous demeanor, the fact that the incident occurred in a high drug trafficking area and the officer's reasonable suspicion that he was selling narcotics did not justify the officer's attempt to conduct a patdown of the defendant's person.

"If, during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous, the officer may undertake a patdown search to discover weapons." (Internal quotation marks omitted.) *State* v. *Strano*, 85 Conn. App. 212, 228, 855 A.2d 1028, cert. denied, 271 Conn. 946, 861 A.2d 1179 (2004). The United States Supreme Court has held that police need only establish a reasonable suspicion that a suspect is armed and dangerous to justify a patdown of the suspect on a public street. *State* v. *Mann*, supra, 271 Conn. 312. "Accordingly, the [Supreme Court of the United States has] authorized a limited patdown search for weapons

under circumstances in which a reasonably prudent officer is warranted in believing, on the basis of specific and articulable facts, that the person with whom he is dealing is armed and dangerous." Id., 311.

The record reflects that the court properly found that the officers had a reasonable and articulable suspicion to justify a patdown of the defendant to determine if he was armed. This conclusion is supported by the court's findings that the defendant appeared nervous, the *Terry* stop occurred in a high crime area and the officers had a reasonable suspicion that the defendant was trafficking narcotics, as well as by the established nexus between narcotics trafficking and firearms. Our Supreme Court long has recognized the known connection between narcotics and firearms. Id., 325. Although the mere presence of the defendant in a high narcotics trafficking area does not by itself justify a patdown, the defendant's presence in a high drug trafficking area is one factor to be considered when determining if the officers had a reasonable suspicion that the suspect was armed and dangerous. *State* v. *Turner*, supra, 62 Conn. App. 399.

The defendant argues that the fact that he appeared nervous and continued to place his hands in his jacket pockets, even after being instructed by the officers to remove his hands from his pockets, is insufficient to establish a reasonable suspicion that he was armed and dangerous. The defendant reasons that, as it was winter, it was natural for him to place his hands in his coat pocket to keep them warm. The defendant also contends that the court erred in holding that his presence in a high crime area gave the officers a reasonable suspicion that he was armed and dangerous. The defendant argues that the fact that the incident occurred in a high crime area, known for narcotics activity, cannot in and of itself justify the officers' attempt to search his person.

The nature of one's actions is informed by the circumstances. Here, the defendant was a suspect in a narcotics trafficking investigation. As the officers approached the defendant, the defendant began to walk in the opposite direction. The officers asked the defendant twice to stop before he complied with the officers' request. While talking to the officers, the defendant appeared nervous and kept putting his hands in his jacket pockets, even after the officers instructed him to remove them. As previously stated, "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (Internal quotation marks omitted.) *State* v. *Mann*, supra, 271 Conn. 324. Our Supreme Court has held that "a suspect's attempt to reach into his pocket or some other place where a weapon may be concealed is a fact that supports a reasonable suspicion that the suspect is armed and dangerous." Id., 325–26. Accordingly, we conclude that that the officers' attempt to conduct a patdown of the defendant's person properly was supported by a reasonable suspicion that the defendant was armed and dangerous.

## II

We next turn to the defendant's second claim on appeal. The defendant claims that the court improperly excluded evidence under the business record exception, § 52-180, which related to a material element of his defense. The record belies the defendant's claim.

The following additional facts are relevant to the disposition of this claim. At trial, the defendant sought to introduce a report from the Bridgeport office of court evaluations under the business record exception to the hearsay rule, regarding his drug dependence. The evidence was proffered to establish that the defendant was in possession of the narcotics with the intent to use, and not to sell. The defendant sought to have the report redacted to eliminate certain information. The

state argued that if the report was going to be offered into evidence, the entire report should be admitted because the witness called by the defendant to authenticate the report relied on the entire report in preparation for trial. The court agreed and informed the defendant that if the witness were asked any questions that required her to rely on the report, the entire report would have to be admitted. In response, counsel for the defendant stated, "I will withdraw the request, Your Honor."

Even if we assume that the court's indication to the defendant constituted an evidentiary ruling, the record reveals that the court did not, as claimed by the defendant, refuse to admit the report as a business record. To the contrary, our review of the record discloses that the court was prepared to admit the report, although the court was unprepared to permit an expurgated version into evidence. Because the defendant has not claimed on appeal that the court abused its discretion in failing to permit a redacted version of the report into evidence, we do not answer the unasked question of whether the court properly determined that if the report was going to come into evidence as a business record, it would have to be the complete report and not merely portions of it.

The judgment is affirmed.

In this opinion the other judges concurred.