STATE OF CONNECTICUT *v.* LEMUEL A. DELVALLE
(AC 27719)

Lavine, Robinson and Stoughton, Js.

Argued February 20—officially released July 15, 2008

*Kevin M. Smith*, special public defender, with whom were *Elizabeth M. Inkster* and *Mary Miller Haselkamp*, senior assistant public defenders, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and *Maxine V. Wilensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The issue in this appeal is whether the trial court properly denied the defendant's motion to suppress narcotics seized following a police officer's warrantless patdown search for weapons. The defendant, Lemuel A. DelValle, appeals from the court's judgment of conviction, rendered following a conditional plea of nolo contendere, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and improper parking in violation of General Statutes § 14-251. On appeal, the defendant claims that the court improperly denied his motion to suppress because, pursuant to article first, §§ 7 and 9, of the constitution of Connecticut[1] and the fourth amendment to the United States constitution,[2] the officer (1) lacked reasonable suspicion to execute a patdown search, (2) exceeded the permissible scope of a patdown search and (3) lacked probable cause to search and seize the defendant's coat. We affirm the judgment of the trial court.

Prior to trial, the defendant filed a motion to suppress the seized narcotics, which were obtained during a warrantless patdown search. On August 31, 2005, the court held a hearing on the motion to suppress. In denying the defendant's motion to suppress, the court set forth

---

[1] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

The constitution of Connecticut, article first, § 9, provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[2] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the following findings in a written decision. "On April 28, 2005, at approximately 9:56 p.m., Trooper Marc Wiener of the Connecticut state police was responsible for patrolling the Interstate 95 corridor between Guilford and East Lyme, including the Interstate 95 rest areas. When Wiener entered the Madison rest area, he noted the presence of a Ford Expedition sport-utility vehicle parked horizontally along a painted yellow curb in a lighted area adjacent to the McDonald's restaurant drive-through. The car was not parked between the white lines [on the pavement]. The vehicle had tinted windows that were rolled up, the lights were off and it appeared to be unoccupied. Wiener pulled past the vehicle and began to run a check on its license plates. Wiener observed, prior to completing the license plate check, a Hispanic male exit the McDonald's restaurant, stop and look at him, freeze for a moment and then quickly proceed to the vehicle, enter it and begin to pull away. Wiener pulled the vehicle over to complete the license plate check and to issue a ticket for illegal parking. Wiener then activated his cruiser's mobile video recorder and his body microphone, allowing him to record all visual and audio events transpiring in front of his cruiser.[3] . . .

"As Wiener approached the vehicle, he observed the defendant in the driver's seat and a female in the passenger seat. Prior to Wiener's asking the defendant for identification, the defendant handed Wiener one valid and one expired driver's license. Wiener testified that he observed the defendant's hands shaking, his forehead beading with sweat and his chest pounding. Wiener then asked the defendant to exit the vehicle. The defendant was in an elevated position, and Wiener could not see his hands and was concerned [about whether] the

---

[3] The videotape, which was entered into evidence at the defendant's suppression hearing before the trial court, has been reviewed by this court.

defendant had a weapon. The defendant complied, leaving the driver's side door open. The defendant followed Wiener to the rear of the defendant's vehicle, and Wiener proceeded to ask the defendant what he had been doing in the area and where he had come from. Wiener testified that the defendant replied nervously, indicating that he was driving home from a visit with relatives in the Bronx, New York. Wiener indicated that the defendant was evasive and failed to answer more specific questions regarding his day's activities.

"The defendant was wearing jean shorts and a thick down coat even though it was April 28. Wiener testified that he observed feathers falling out of a hole in the defendant's coat and that he became concerned that the defendant could conceal a weapon there. At this point, Wiener, out of concern for his safety, conducted a patdown search of the defendant and discovered a knife in the defendant's pants pocket. As the patdown continued, Wiener grabbed the coat in the area near the hole in the defendant's coat, and he immediately felt what he believed to be packets of street level narcotics. Wiener, from specialized narcotics training and field experience, knew the feel of packaged narcotics. Upon [the] discovery, Wiener instructed the defendant to remove his jacket. Wiener testified that the defendant dropped his coat halfway down his shoulders and started to walk by him. Wiener then took hold of and completely removed the coat on his own.

"While Wiener proceeded to remove the drugs from the hole in the coat, the defendant started walking toward the open door of the vehicle. Wiener ordered the defendant back to the rear of the vehicle. Subsequently, the defendant again began walking in the direction of the open door. Wiener ordered the defendant to the ground and began to detain him. The defendant, however, broke free, grabbed his coat and ran, pulling plastic bags from the hole in the coat and throwing

them to the ground. Wiener apprehended the defendant and ascertained that the plastic bags contained heroin. Wiener then searched the hole in the jacket and discovered 200 additional bags of heroin. The total amount of heroin seized was 597 bags." (Citation omitted.)

The state initially charged the defendant with sale of narcotics in violation of General Statutes § 21a-278 (b) and interfering with an officer in violation of General Statutes § 53a-167a (a). The defendant moved to suppress the seized narcotics on the ground that Wiener lacked the reasonable and articulable suspicion of criminal activity that is required to conduct a valid patdown search. Following an evidentiary hearing, the court denied the defendant's motion to suppress. On the basis of the facts set forth previously, the court concluded that Wiener had a reasonable and articulable suspicion for frisking the defendant and that Wiener, in light of his training and experience, had probable cause to search the defendant's coat and to seize the narcotics contained therein. The defendant subsequently entered a conditional plea of nolo contendere to possession of narcotics with intent to sell in violation of § 21a-277 (a) and improper parking in violation of § 14-251. The court imposed a fine of $35 for improper parking and sentenced the defendant to six years incarceration for possession of narcotics with intent to sell. This appeal followed.

We first set forth the applicable standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) State v. Santos, 267 Conn. 495, 503, 838 A.2d 981 (2004). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 517, 914 A.2d 1058 (2007). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 503.

"Article first, §§ 7 and 9, of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest . . . . In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)][4] with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9, of our state constitution." (Internal quotation marks omitted.) *State* v. *Dalzell*, 96 Conn. App. 515, 523–24, 901 A.2d 706 (2006), rev'd in part on other grounds, 282 Conn. 709, 924 A.2d 809 (2007).

[4] Under *Terry* v. *Ohio*, supra, 392 U.S. 22, an officer may forcibly stop a suspect and engage in a "stop and frisk" investigation if the officer has a reasonable and articulable suspicion that the suspect has committed or is about to commit a crime. See *State* v. *Santos*, supra, 267 Conn. 501 n.17.

"When considering the validity of a *Terry* stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any . . . the encounter between [the police officer] and the defendant constitute[d] an investigatory stop or seizure.[5] Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 503. "An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion exists requires that we determine, in light of the record taken as a whole, (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts give rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 470–71, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005). "In ascertaining whether reasonable suspicion existed for [a] patdown search, the totality of the circumstances . . . must be taken into account." (Internal quotation marks omitted.) *State* v. *Farr*, 98 Conn. App. 93, 100, 908 A.2d 556 (2006).

I

The defendant first claims that the court improperly denied his motion to suppress because Wiener did not have a reasonable suspicion to search him. Specifically, the defendant asserts that certain of the court's factual findings are clearly erroneous or, in the alternative, that the court's findings do not suffice as a basis for reasonable suspicion. We do not agree.[6]

---

[5] In this case, the state does not dispute the court's conclusion that the defendant was seized.

[6] The defendant concedes that Wiener had the authority to ask the defendant to get out of his vehicle. "A police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for the stop is only an infraction under our traffic laws. Upon doing so, he prudently

A

We first address whether the court's factual findings are clearly erroneous. The court found: "(1) Wiener observed the defendant's vehicle parked illegally; (2) Wiener observed the defendant look at him, hurry to his vehicle and then attempt to pull away; (3) once stopped, the defendant gave Wiener both a valid driver's license and an expired one; (4) Wiener observed that the defendant was sweating and nervous; (5) he also observed that the defendant was evasive when asked simple questions; (6) Wiener observed that the defendant wore a thick down coat on April 28; and (7) the coat had a hole in its [seam] that could be used to conceal a weapon."

The defendant claims that the court's finding that he was evasive with Wiener is clearly erroneous. He maintains that he was not evasive but, rather, that his failure to respond to some of Wiener's questions was entirely attributable to a language barrier, given that he is primarily a Spanish speaker. A court must proceed with care when faced with a claim that a defendant's conduct is based on a lack of understanding, not a refusal to cooperate. We are satisfied, however, that the record contains sufficient evidence on which the court reasonably could have relied in determining that the defendant behaved evasively during the encounter with Wiener. The court accepted Wiener's testimony that the defendant responded to his requests and conversed with him in English but became more evasive as their encounter progressed. "The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996). Additionally, the

may prefer to ask that an occupant exit the vehicle . . . ." (Internal quotation marks omitted.) *State* v. *Dukes*, 209 Conn. 98, 122, 547 A.2d 10 (1988).

videotape confirms that the defendant was capable of conversing in English. On the tape, he can be seen and heard engaging in a brief conversation with Wiener and responding to Wiener's requests.

The defendant also regards as clearly erroneous the court's finding that the hole in his coat might have contained a weapon. According to the defendant, it was not objectively reasonable for Wiener, without some additional incriminating indicator such as a visible bulge or gun snout, to suspect that the coat might conceal a weapon. Our review of the record leads us to conclude that contrary to the defendant's assertions, the record amply supports the court's finding that the hole in the defendant's coat might have been used to conceal a weapon. First, the court heard Wiener's testimony that the hole was large enough to accommodate a hand and a weapon. Further, the court examined the coat, which the state introduced into evidence. The court thus properly concluded that Wiener acted on his objective belief that the hole at issue might be used to conceal a weapon. Accordingly, the defendant's claim that certain of the court's factual findings are clearly erroneous must fail.[7]

## B

We next examine the court's conclusion that Wiener possessed a reasonable and articulable suspicion to conduct a patdown search of the defendant. The court stated: "On the basis of the totality of the circumstances presented to Wiener, and applying an objective standard, Wiener had a reasonable and articulable suspicion for the investigatory detention. Wiener did not act upon

---

[7] The defendant also claims that it was clearly erroneous for the court to find that he attempted to drive away from Wiener before Wiener stopped him. Contrary to the defendant's assertion, the court did not find that the defendant drove away *from Wiener* but found, rather, that "Wiener observed the defendant look at him, hurry to his vehicle and then attempt to pull away . . . ."

a hunch, speculation or pretext when he conducted the investigatory detention of the defendant. Wiener acted upon his reasonable suspicion, sufficiently articulated in his testimony and objectively supported by the circumstances surrounding his encounter with the defendant."

Taking into account the totality of the circumstances, we conclude that the court properly determined that the facts of this case gave rise to Wiener's reasonable suspicion. First, it was proper for the court to consider the totality of the defendant's reaction to Wiener, particularly that "the defendant looked at [Wiener], hurried to his vehicle and then attempt[ed] to pull away" and that "the defendant gave Wiener . . . an expired . . . license." "Both Connecticut and federal courts have recognized that a suspect's reaction to the police may be one factor considered in the totality analysis." *State* v. *Nash*, 278 Conn. 620, 636, 899 A.2d 1 (2006). Additionally, the court took into account the fact that Wiener observed the defendant to be evasive when asked simple questions, for "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (Internal quotation marks omitted.) *State* v. *Tuck*, 90 Conn. App. 872, 879–80, 879 A.2d 553 (2005).

It was appropriate for the court to consider that the hole in the defendant's coat, as well as the fact that down feathers were flowing from it, heightened Wiener's suspicion that the defendant might be armed. As the court stated, "Wiener indicated that he observed the defendant wearing a thick down coat in late spring and that feathers were falling out of a hole in the coat's lining, which Wiener was concerned could be used to conceal a weapon. . . . Viewed by this objective standard, a reasonably prudent officer would have been warranted in the belief that either his safety, or the safety of others, was in jeopardy. Trooper Wiener's

patdown of the defendant was justified." (Citations omitted.)

In light of the foregoing, we agree with the court that Wiener's patdown search of the defendant was justified. "If, during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous, the officer may undertake a patdown search to discover weapons." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 281, 764 A.2d 1251 (2001). Although the defendant insists that Wiener's search cannot be justified under *Terry* because the facts of *Terry* are distinguishable from the facts of this case, we find these distinctions inapposite. First, the defendant asserts that because Wiener had less experience than the officer in *Terry*, Wiener lacked the adequate experience to form a reasonable suspicion as to the defendant's conduct. We do not agree. On the night he encountered the defendant, Wiener had served as a state trooper for seven and one-half years and had received specialized training in narcotics interdiction. He testified at the suppression hearing that he had made "probably . . . hundreds" of arrests involving patdowns.

The defendant also alleges that there was no indication either that he was connected to violent criminal activity or that violent activity was afoot in the rest stop. This allegation fails to serve the defendant. Although an officer's impressions about a suspect's connection to violent crime or about a suspect's location in a high crime area, both of which are lacking here, may be considered in the totality of circumstances that support a finding of reasonable suspicion, neither factor is required. See *State* v. *Donahue*, 251 Conn. 636, 646, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000). In this case, the court

properly determined that Wiener had formed an objectively reasonable and articulable suspicion before conducting his patdown search of the defendant.

## II

The defendant's second claim is that the court improperly denied his motion to suppress because Wiener's search of him exceeded the permissible scope of a *Terry* patdown search. Specifically, the defendant insists that Wiener's grabbing, rather than patting, his coat, constituted an arbitrary search for criminal evidence. We are not persuaded.

"A patdown or frisk occurs when the officer limits the search to an open, flat-handed patdown of the exterior of a suspect's clothing for weapons and does not manipulate the object that he discovers or otherwise extend the scope of the search." *State* v. *Nash*, supra, 278 Conn. 625 n.6. "When conducting a patdown search of a suspect, the officer is limited to an investigatory search for weapons in order to ensure his or her own safety and the safety of others nearby." *State* v. *Clark*, supra, 255 Conn. 282. "The officer cannot conduct a general exploratory search for whatever evidence of criminal activity [he or she] might find. . . . Logically, therefore, a patdown search for weapons that is justified at its inception becomes constitutionally infirm if the search . . . becomes more intrusive than necessary to protect the safety of the investigating officer." (Citations omitted; internal quotation marks omitted.) Id. "The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances."

(Internal quotation marks omitted.) *State* v. *Januszew-ski*, 182 Conn. 142, 149, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

The defendant maintains that Wiener exceeded the permissible scope of a *Terry* search by grabbing his coat. Wiener testified that he properly initiated his pat-down search with an open handed motion and that he grabbed the defendant's coat only to the extent that it was necessary to search it for weapons. In patting down the bulky material of the coat, Wiener grabbed the material to the extent necessary to detect weapons, but he did not manipulate the objects he felt. The court found this reasonable under the circumstances. We agree with the court's conclusion that Wiener conformed to the legal requirement of doing only what was needed to neutralize the threat of physical harm.

"[T]he law recognizes the important need to allow authorities to graduate their responses to the demands of any particular situation." (Internal quotation marks omitted.) *State* v. *Nash*, supra, 278 Conn. 642. "[W]e do not require police officers who are properly attempting to neutralize the threat of physical harm to do so at increased peril." (Internal quotation marks omitted.) Id., 644. "[W]hile we respect the constitutional rights against unreasonable search and seizure of the citizenry . . . it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." (Internal quotation marks omitted.) *State* v. *Aviles*, 277 Conn. 281, 298, 891 A.2d 935, cert. denied, 549 U.S. 840, 127 S. Ct. 108, 166 L. Ed. 2d 69 (2006). The facts of this case, as expressly found by the court, lead to the conclusion that Wiener was faced with a situation he reasonably feared might pose imminent danger to him. His responses throughout the encounter were incremental in nature, one concern leading to the next, and calibrated to what was occurring. With reasonable suspicion that the defendant might be

armed, Wiener properly searched him for weapons. The defendant's claim that Wiener's search of him exceeded the permissible scope of a patdown search thus fails.

## III

The defendant next argues that the court improperly denied his motion to suppress because Wiener lacked probable cause to search and seize his coat. More particularly, the defendant claims that Wiener lacked authority to pull the coat off him, reach into its lining and confiscate the heroin. We do not agree.

"While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Trine*, supra, 236 Conn. 237. "The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .

"On appeal, we analyze a trial court's determination of the existence of probable cause, in the context of a warrantless search or seizure, in the same manner that we analyze a trial court's determination of the existence of the reasonable belief necessary to conduct a patdown search. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the [court's] decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the . . . decision are supported by the evidence or whether, in

light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Because a trial court's determination of the existence of probable cause implicates a constitutional claim, we must review the record carefully to ensure that its determination was supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Id., 237–38.

In *Minnesota* v. *Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), the United States Supreme Court established the plain feel exception to the warrant requirement. Under *Dickerson*, an officer acting without a warrant may seize contraband that the officer has detected through the sense of touch during a lawful patdown search. Id., 375. In *State* v. *Trine*, supra, 236 Conn. 234, our Supreme Court recognized the applicability of the plain feel exception to the warrant requirement of article first, § 7, of our state constitution, thereby establishing that an officer may seize narcotics that he feels during a lawful patdown search. "Just as a trained and experienced police officer may use the sense of touch during a lawful patdown search to detect one of the myriad of weapons that an individual might conceal on his or her person . . . so the officer may use that same sense of touch to discern the presence of nonthreatening contraband that possesses distinctive tactile characteristics." (Internal quotation marks omitted.) Id., 232–33. An officer may seize contraband during a patdown search for weapons if the illegal nature of the substance is readily apparent. See *State* v. *Davis*, 85 Conn. App. 755, 762, 859 A.2d 50 (2004).

The court in this case concluded that "once Wiener lawfully discovered what he immediately recognized to be contraband under the 'plain feel' doctrine, he had probable cause to expand the scope of his search and fully remove the defendant's jacket." The court based this determination on Wiener's testimony that upon patting down the defendant, he immediately recognized

the plain feel of packaged narcotics. The perceptions of an experienced officer "might have more significance to him in determining whether the law is being violated at a given time and place than they would have to a layman . . . ." (Internal quotation marks omitted.) *State* v. *Trine*, supra, 236 Conn. 232.

Our Supreme Court has stated that "a police officer's tactile perceptions, formed during a lawful patdown search, in appropriate circumstances may provide the officer with probable cause to believe that an object felt during the search is nonthreatening contraband." (Internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 289. In this case, once Wiener determined that the defendant was carrying narcotics, he was authorized under the plain feel doctrine to seize those narcotics. Taking account of all of the circumstances particular to this case, we agree with the court that Wiener, acting pursuant to probable cause, validly searched the defendant's coat and seized the heroin inside it. Accordingly, we will not disturb the court's conclusion that Wiener acted pursuant to probable cause when he searched and seized the defendant's coat.

The judgment is affirmed.

In this opinion the other judges concurred.