******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SHANAN A. WILLOUGHBY
(AC 35863)

Beach, Alvord and Harper, Js.

*Argued September 9—officially released November 4, 2014*

(Appeal from Superior Court, judicial district of New London, geographical area number twenty-one, Jongbloed, J.)

*Sandy M. Moore*, for the appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Christa L. Baker*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Shanan A. Willoughby, appeals from the judgment of conviction, rendered after a jury trial, of possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b),[1] interfering with an officer in violation of General Statutes § 53a-167a, forgery in the second degree in violation of General Statutes § 53a-139, and criminal impersonation in violation of General Statutes § 53a-130. On appeal, the defendant argues that the trial court (1) incorrectly admitted testimony of a police officer that he had received information that the defendant was involved in a shooting and drug sales without issuing a contemporaneous limiting instruction specifying the purpose for which the evidence was to be considered, and (2) improperly denied his motion to suppress because the evidence was obtained as a result of an illegal motor vehicle stop. We affirm the judgment of the trial court.

The following facts were found by the court. Police Officer Jason Calouro was patrolling the area of Main Street in downtown Norwich on November 18, 2011, when Calouro observed the defendant entering the passenger side of a vehicle after parting ways with another person. Calouro observed the vehicle pull into traffic without using a signal and cross a double yellow line. After witnessing the motor vehicle violations, Calouro pulled the vehicle over.[2] Upon approaching the vehicle, Calouro observed the defendant, seated in the passenger seat, move his hand behind himself to the small of his back. On the basis of the defendant's movement and prior information Calouro had received that the defendant had been involved in a shooting and drug sales, Calouro believed he might be concealing a weapon. Calouro asked the defendant to exit the vehicle, and he conducted a patdown of the defendant's outer clothing.

While conducting the patdown, Calouro felt a hard item the size of a golf ball in the area of the defendant's buttocks. When asked what the item was, the defendant swung his elbow into Calouro's shoulder and attempted to get away. The defendant actively resisted Calouro's attempts to secure him and was not subdued until Calouro received assistance from another officer. At some point during the struggle, the item fell from the defendant's leg, and he kicked it under the car. The item, a plastic bag containing a substance that tested positive for cocaine, was recovered.

The defendant was brought to the Norwich Police Department, where he provided an identification card bearing the name Ibatafari Lowe. He also signed a notice of rights form under the name of Ibatafari Lowe before admitting that he was actually Shanan Willoughby. The defendant additionally made statements that he sold

narcotics and provided consent to officers to search his apartment, where the officers located marijuana and currency.

On January 29, 2013, the defendant was found guilty of possession of marijuana with intent to sell, interfering with an officer, forgery in the second degree, and criminal impersonation. The defendant was found not guilty of possession of narcotics in violation of General Statutes § 21a-279 (a), possession of crack cocaine with the intent to sell in violation of General Statutes § 21a-278 (b), and assault of a police officer in violation of General Statutes § 53a-167c. On June 21, 2013, the defendant was sentenced to seven years incarceration, suspended after five years, and three years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the admission of Officer Calouro's testimony violated the hearsay rule. The defendant challenges the portion of Calouro's testimony in which he recounted statements made to him concerning the defendant's involvement in a shooting and drug sales. Specifically, the defendant claims error in the court's contemporaneous instruction to the jury not to consider the challenged statements for the truth of the matter asserted. The defendant asserts that this contemporaneous instruction was vague and claims that the jury "received a conflicting message" as to the purpose of Calouro's testimony. The defendant contends that the statements were "offered for the truth of the statement because the inference is that Officer Calouro would not have acted if he did not believe the truth in the statements of the unnamed witnesses."

The following additional facts are relevant to the defendant's claims. At trial, the state called Calouro to the witness stand to testify regarding his interaction with the defendant. In addition to Calouro's testimony concerning the effectuation of the stop, Calouro testified regarding the basis for his belief, at the time he approached the vehicle, that the defendant might be armed. Calouro explained that besides observing the defendant move his hand behind himself to the small of his back, he also had previously received information that the defendant had been involved in a shooting and was involved in drug sales. Defense counsel then objected to this testimony, and counsel for the state indicated that it was not being offered for the truth of the matter. The court overruled the objection, instructing the jury that it was not to take the testimony for the truth of the matter asserted.[3] On cross-examination, defense counsel followed up with Calouro and questioned him further about his receipt of this information.

In the final charge to the jury, delivered on January

24, 2013, the day after Calouro's testimony was given, the court instructed the jury that certain statements, including those made to the witness "regarding a shooting and prior narcotics dealing," were offered only to show "the basis for the witness' beliefs or actions," and further, that such statements were not offered to prove the truth of those matters.[4] No objection was made to the instruction as delivered.[5]

We first set forth the standard of review that guides our analysis. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Foster*, 293 Conn. 327, 333–34, 977 A.2d 199 (2009).

It is settled law that out-of-court statements that are not offered to establish the truth of the matter asserted are not hearsay. "[A]n out-of-court statement offered to prove the truth of the matter asserted is hearsay. . . . If such a statement is offered for a purpose other than establishing the truth of the matters contained in the statement, it is not hearsay." (Citation omitted.) *State* v. *Esposito*, 223 Conn. 299, 315, 613 A.2d 242 (1992); see also *State* v. *Crafts*, 226 Conn. 237, 253, 627 A.2d 877 (1993) ("[a]n out-of-court statement is hearsay . . . only if it is offered to prove the truth of the matter asserted in the statement"). "Statements of declarants offered to show their effect on the listener, not for the truth of the contents of the statements, are not hearsay and are admissible." *Dinan* v. *Marchand*, 279 Conn. 558, 572, 903 A.2d 201 (2006).

The challenged statements, which were that the defendant had been involved in a shooting and drug sales, were made to Calouro, who then testified at trial that he had received this information. A review of the record leads us to conclude that the out-of-court statements were admitted to show their effect on Calouro, specifically, the basis for his belief that the defendant might have been armed, and not to prove that the defendant had indeed participated in either of these activities. Accordingly, the statements did not constitute hearsay, and the court did not abuse its discretion in admitting Calouro's testimony.

The defendant further argues that "[t]here should have been some guidance during the trial as to what specific issue the admitted hearsay evidence was intended to support, at the time the evidence was admitted." In fact, our case law reveals that the court is not required to give a contemporaneous limiting instruction

specifying the purpose for which statements may be considered. "[A]lthough it is acceptable for a trial court, in its discretion, to give a contemporaneous limiting instruction to the jury, there is no rule of practice or statutory requirement that the court must give such an instruction contemporaneously with the introduction of such testimony." (Internal quotation marks omitted.) *William C.* v. *Commissioner of Correction*, 126 Conn. App. 185, 190, 10 A.3d 115, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011).[6]

The defendant provides no legal support for his contention that the court's contemporaneous instruction to the jury that it was not to take the statements for the truth of the matter asserted was somehow insufficient because it did not also relate the permissible purpose for which the testimony could be considered, where the permissible purpose was clearly conveyed to the jury in its final charge.[7] In this case, the jury was instructed at the time of the testimony that it was not to consider the statements for the truth of the matter asserted and was further instructed in the final charge that it was to consider the statements only for the purpose of showing the basis for Calouro's beliefs or actions.[8] Accordingly, we conclude that the trial court did not abuse its discretion in admitting the testimony for a nonhearsay purpose.

## II

With respect to the defendant's second claim, which is that the court improperly denied his motion to suppress, the following additional facts are relevant. On January 17, 2013, the defendant filed a motion to suppress the physical evidence that had been seized, any statements he had made, and any identification testimony, arguing that the evidence should be excluded as the fruit of an unlawful search. The defendant presented two arguments in support of his claim that the search was illegal. First, he argued that the motor vehicle stop was pretextual and therefore unsupported by a reasonable and articulable suspicion. He alternatively argued that even if the stop was justified, the patdown exceeded the permissible bounds for an investigative stop. The court held an evidentiary hearing on January 23, 2013. Calouro testified as to his previous knowledge of the defendant[9] and his interaction with the defendant after stopping the motor vehicle. At the conclusion of the hearing, the court orally denied the motion to suppress. On March 11, 2013, the court issued a written memorandum of decision, concluding that the motor vehicle stop was supported by a reasonable and articulable suspicion that was based on the observation of motor vehicle violations and that the patdown was justified by "a substantial concern for officer as well as public safety . . . ."

We begin by noting our standard of review in connection with a motion to suppress. "[O]ur standard of

review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . ." (Internal quotation marks omitted.) *State* v. *Ocasio*, 112 Conn. App. 737, 742–43, 963 A.2d 1109, cert. denied, 292 Conn. 904, 973 A.2d 106 (2009).

The defendant makes two main arguments in support of his claim that the trial court improperly denied his motion to suppress evidence obtained as a result of the motor vehicle stop. We disagree with both and will examine them in turn.

First, we consider the defendant's contention that the court improperly concluded that the motor vehicle stop was justified by a reasonable and articulable suspicion. The defendant claims that Calouro improperly relied solely on the information that he had received, which was that the defendant had been involved in a shooting and drug sales, to look for a reason to stop the motor vehicle. He claims that Calouro immediately focused on the defendant by approaching the passenger side, and that this, combined with Calouro's testimony that he was looking for a reason to stop the car, rendered the stop impermissible.

"A stop pursuant to *Terry* v. *Ohio* [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)] . . . is legal if three conditions are met: (1) the officer must have a reasonable suspicion that a crime has occurred, is occurring, or is about to occur; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the detention must be reasonable when considered in light of its purpose. . . . Because a reasonable and articulable suspicion is an objective standard, we focus not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Citations omitted; internal quotation marks omitted.) *State* v. *Cyrus*, 297 Conn. 829, 837, 1 A.3d 59 (2010). "An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion exists requires that we determine, in light of the record taken as a whole, (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts give rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *DelValle*, 109 Conn. App. 143, 150, 950 A.2d 603, cert. denied, 289 Conn. 928, 958 A.2d 160 (2008).

The defendant does not challenge the trial court's finding that the operator of the motor vehicle "pulled

into traffic without signaling and crossed a double yellow line," violations for which the operator was subsequently ticketed.[10] We therefore examine only whether the facts as found rise to the level of a reasonable and articulable suspicion. It is settled law that a police officer has the authority to stop a motor vehicle upon commission of a motor vehicle violation. See *State* v. *Jones*, 113 Conn. App. 250, 262, 966 A.2d 277 ("[a] police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for the stop is only an infraction under our traffic laws" [internal quotation marks omitted]), cert. denied, 292 Conn. 901, 971 A.2d 40 (2009). We thus conclude that the trial court properly determined that Calouro possessed a reasonable and articulable suspicion to stop the vehicle on the basis of the observation of the motor vehicle violations.[11]

Having determined that the initial stop of the motor vehicle was lawful, we next address the defendant's claim that the patdown search exceeded the bounds of the permissible stop. The defendant specifically argues that the movement of his hand behind himself to the small of his back was not sufficient to lead Calouro to reasonably believe that he was armed,[12] and further, that there were no facts indicating that the information Calouro received concerning the defendant's involvement in a shooting was true.

A police officer, after stopping a vehicle for a motor vehicle violation, may lawfully direct an occupant to step out of the vehicle. *State* v. *Dukes*, 209 Conn. 98, 122, 547 A.2d 10 (1988). Furthermore, "[i]f, during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous, the officer may undertake a patdown search to discover weapons." (Internal quotation marks omitted.) *State* v. *Tuck*, 90 Conn. App. 872, 880, 879 A.2d 553 (2005). "In ascertaining whether reasonable suspicion existed for the patdown search, the totality of the circumstances—the whole picture—must be taken into account." (Internal quotation marks omitted.) *State* v. *Starks*, 94 Conn. App. 325, 331, 892 A.2d 959, cert. denied, 278 Conn. 918, 901 A.2d 44 (2006).

The court made findings of fact that adequately supported its determination that the patdown was justified by a reasonable suspicion that the defendant may have been armed.[13] First, the court found that Calouro had observed the defendant move his hand behind himself to the small of his back, which Calouro knew from his training and experience to be a spot where weapons are often carried. "[A] suspect's attempt to reach into his pocket or some other place where a weapon may be concealed is a fact that supports a reasonable suspicion that the suspect is armed and dangerous." (Internal quotation marks omitted.) *State* v. *Tuck*, supra, 90 Conn. App. 882. Second, the court found that Calouro had

received information that the defendant was a drug dealer and may have been involved in a shooting. Third, the court found that Calouro was aware that the defendant had been arrested for possession of drugs and assault of a police officer. See *State* v. *Starks*, supra, 94 Conn. App. 329–31 (upholding trial court's determination of reasonable suspicion to conduct patdown during investigatory stop, where one consideration was officer's knowledge of defendant's prior arrest for assault on or interfering with police officer). Accordingly, we agree with the court that the patdown was justified by a reasonable belief that the defendant may have been armed and dangerous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that although the judgment file contains a scrivener's error indicating that the defendant was convicted of sale of a controlled substance, other documents in the court file contain the correct charge, possession of marijuana with intent to sell, of which the defendant was convicted.

[2] The operator of the vehicle was subsequently released after being issued a citation for the motor vehicle infractions of failure to signal and failure to drive right.

[3] On direct examination, Officer Calouro testified as follows:

"[The Prosecutor]: And what did you observe [when approaching the vehicle]?

"[Officer Calouro]: As I was doing this, [the defendant] leaned forward and put his hand behind him, like this, put his hand back down in the area of the small of his back and leaned all the way back in his seat, which was a little bit reclined at the time.

"[The Prosecutor]: And let the record reflect that the witness has placed his right hand on the small of his back and is leaning back in his chair.

"The Court: It may.

"[The Prosecutor]: And when you saw this, what, if anything, did this mean to you?

"[Officer Calouro]: I immediately thought that he may have a weapon. I previously got information that he was involved in a shooting in the area where he lived at the time, which was 219 Broadway, and there was another individual that I spoke with that said he was involved in ongoing drug sales.

"[Defense Counsel]: Objection, Your Honor. I'd ask that—there's no direct evidence that that took place. Ask that it be stricken.

"The Court: [Prosecutor].

"[The Prosecutor]: Don't believe he's offering it as direct evidence, Your Honor.

"The Court: You're not offering it for the truth of the matter at this time?

"[The Prosecutor]: No, Your Honor.

"The Court: All right. Then, I'll overrule the objection, and I'll just indicate, ladies and gentlemen, that you're not to take that testimony for the truth of the matter asserted."

We note that after the court instructed the jury that it was not to take the statements for the truth of the matter asserted, defense counsel did not request further contemporaneous instruction as to the purposes for which the jury could consider the statements.

[4] The court instructed the jury as follows: "You will recall that I have ruled that some testimony was allowed for a limited purpose. One witness testified about statements made to them regarding a shooting and prior narcotics dealing. These statements were not offered to prove the truth of those matters, but only to show the basis for the witness' beliefs or actions. You may consider such evidence if you believe it and further find that it logically, rationally and conclusively supports the issue for which it was offered by the state, but only as it may bear on that issue.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it does not logically, rationally and conclusively support the issue for which it was offered by the state, namely, the basis for the witness' beliefs or actions, then you may not consider that testimony for any purpose."

[5] After charging the jury, the court inquired of counsel as follows:

"The Court: All right. Let me just inquire, were there any objections to the charge as delivered?

"[The Prosecutor]: No, Your Honor.

"[Defense Counsel]: I'm sorry, Your Honor. I was—

"The Court: Any objections to the charge as delivered?

"[Defense Counsel]: No objection, Your Honor."

[6] In *William C.* v. *Commissioner of Correction*, supra, 126 Conn. App. 187–88, no contemporaneous limiting instruction was issued at the time of constancy of accusation testimony. Only the court's final charge to the jury instructed as to the proper use of such testimony. Id., 190.

[7] The defendant cites *State* v. *Buster*, 224 Conn. 546, 558, 620 A.2d 110 (1993), for our Supreme Court's recognition that the trial court twice instructed the jury as to the purpose for which it could consider certain statements. The defendant cites not to the holding of *Buster*, but rather to the Supreme Court's discussion of the treatment of those statements by this court in its review of the *Buster* defendant's claims on appeal from the trial court's judgment of conviction. Ultimately, the case provides no support for the defendant's argument.

[8] The defendant's argument that the jury received a conflicting message as to the purpose of Calouro's testimony is equally untenable. The court's final instruction to the jury regarding the purpose for which the out-of-court statements could be considered was clear, and the defendant does not challenge this instruction on appeal. "The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions." (Internal quotation marks omitted.) *State* v. *Francis*, 148 Conn. App. 788, 825, 86 A.3d 1074, cert. granted on other grounds, 311 Conn. 940, 89 A.3d 349 (2014).

[9] Calouro testified to being aware of the defendant prior to observing him parting ways with another person on the day of the motor vehicle stop. Calouro stated that "[o]ne of [the defendant's] neighbors indicated that he is known to deal drugs on Perkins," "[t]hrough interviews with [an arrestee] I learned that [the defendant] was a higher-end drug dealer," "[t]he neighbor indicated that he was involved in a shooting, they believe that there was a shooting outside that he was—he was engaged in." Last, Calouro stated, "I was aware that [the defendant] had been arrested for narcotics as well as, I believe, assault on a Plainfield police officer."

[10] Despite the fact that the motor vehicle operator ultimately was ticketed for the observed violations, the defendant argues that Calouro was not effectuating the purpose of the stop and that he was unduly focused on the defendant, as evidenced by the fact that Calouro initially approached the passenger side of the vehicle. The defendant provides no authority to support his argument that a motor vehicle stop, conducted after observation of motor vehicle violations, would be rendered invalid by the officer's decision to approach the passenger side first. Furthermore, an officer might approach the passenger side for a number of reasons. See, e.g., *State* v. *Sward*, 124 Conn. App. 546, 549, 5 A.3d 965 (2010) ("[f]or safety reasons, and because the defendant's vehicle was partially parked in the right travel lane, [the officer] approached the defendant's car from the passenger's side").

[11] In response to the defendant's argument that Calouro improperly relied on the information he received as to the defendant's involvement in a shooting and drug sales to look for a reason to stop the motor vehicle, we note that "[i]t is well established that an officer's subjective intent in pulling over a motorist is irrelevant to the question of whether the officer's conduct violates the constitution." *State* v. *Burroughs*, 288 Conn. 836, 852, 955 A.2d 43 (2008).

[12] The defendant cites *State* v. *Badgett*, 200 Conn. 412, 430–31, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), arguing that "[f]urtive movements do not necessarily give rise to a presumption that there are weapons in the car." In *Badgett*, the court determined that the warrantless search of a bag in a motor vehicle for weapons was not supported by probable cause, a more stringent standard than reasonable and articulable suspicion. Id. Our case law is clear, however, that a furtive movement may be a factor in determining whether there exists reasonable suspicion to believe that a detained individual is armed. *State* v. *Butler*, 296 Conn. 62, 75, 993 A.2d 970 (2010) (officers' observation of furtive movement toward car console was permissible consideration in determination of reasonable suspicion to conduct protective search of console).

[13] The defendant does not challenge the court's findings of fact as to the observation of the movement of his hand behind himself to the small of his back or Calouro's receipt of information as to the defendant's involvement

in drug dealing or a shooting; the defendant's challenge is only to whether the shooting actually occurred. We therefore determine solely whether these facts rise to the level of a reasonable suspicion that the defendant may have been armed.

———————————————————